Filed 10/12/22  Yochheim v. Dept. of Motor Vehicles CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Amador)

----

| | |
|---|---|
| TASH YOCHHEIM, | C094902 |
| Plaintiff and Appellant, | (Super. Ct. No. 20CVC11775) |
| v. | |
| DEPARTMENT OF MOTOR VEHICLES, | |
| Defendant and Respondent. | |

The Department of Motor Vehicles (DMV) suspended appellant Tash Yochheim's driver's license for driving with a blood-alcohol concentration of 0.01 percent or greater while under 21 years old.  Yochheim challenged the suspension via a petition for writ of mandate.  The trial court denied Yochheim's petition, concluding evidence in the administrative record supported the DMV's determination.  On appeal, Yochheim contends:  (1) the DMV's decision to suspend his license depended on the improper consideration of hearsay evidence, without which his detention was unlawful; and

1

(2) because the DMV could not demonstrate his lawful detention, we must overturn the suspension. We affirm.

## BACKGROUND

Around 2:00 a.m., a California Highway Patrol (CHP) officer was dispatched to reports of a possible traffic collision involving multiple suspects and vehicles in Amador County. Dispatch further advised that one of the callers sounded intoxicated. While driving to the scene, the CHP officer learned that a local sheriff deputy had already detained a possible driver.

When the CHP officer arrived about 18 minutes after being dispatched, the sheriff deputy told him: (1) he had spoken to occupants of one of the vehicles, a Mazda, involved in the traffic incident, and they described the driver of the *other* vehicle, a Chevy, to the sheriff deputy; and (2) he later saw a man matching that description (Yochheim) return to the scene as a passenger in the Chevy. The sheriff deputy detained Yochheim, and waited for CHP to arrive.

While the CHP officer investigated the possible traffic collision, a person who was in the Mazda at the time of the incident showed him cell phone video of Yochheim driving away from the scene. When the CHP officer spoke to Yochheim, Yocheim was seated inside the sheriff deputy's patrol vehicle and was emitting "the strong odor of an alcoholic beverage." Yochheim admitted he drove the Chevy and had one beer before the traffic incident.

Though the CHP officer ultimately concluded no traffic collision happened, he arrested Yochheim at 4:25 a.m. for driving under the influence of alcohol. A breath test at the scene indicated Yochheim's blood-alcohol content was 0.11 percent.

The DMV suspended Yochheim's driver's license after an administrative hearing. At the hearing, Yochheim's counsel objected to "all hearsay contained within" two exhibits admitted into evidence: (1) the CHP officer's "Under Age 21 Officer's Statement" signed under penalty of perjury on the date of the incident, and (2) the CHP

2

officer's "Arrest—Investigation Report" dated one week after the incident, which included multiple pages of supplemental narrative regarding the incident, including what the sheriff deputy told the CHP officer.

In a written ruling, the hearing officer determined: (1) the CHP officer had probable cause to believe Yochheim violated multiple Vehicle Code[1] sections, including section 23136 (driving with a blood-alcohol concentration of 0.01 percent or greater when under the age of 21 years) and section 23152 (driving under the influence of alcohol); (2) Yochheim was lawfully detained; and (3) Yochheim violated section 23136. As a result, the hearing officer suspended Yochheim's driver's license for one year.

Yochheim filed a petition for writ of mandate in the trial court arguing the section 23136 suspension was improper because—"[e]xcept for admissions [he] made after [his] illegal detention"—"[t]here was no competent evidence" he had driven a vehicle with "any alcohol in his system." The trial court denied the petition, finding the DMV "made a determination supported by the evidence in the record."

Yochheim timely appealed.

## DISCUSSION

Yochheim contends the suspension of his driver's license rested on the improper consideration of hearsay, without which his detention was unlawful.[2] And because the DMV could not demonstrate Yochheim was lawfully detained—a statutory prerequisite to proper suspension of his driver's license—we should overturn the suspension. The

---

[1] Undesignated statutory references are to the Vehicle Code.

[2] Yochheim also initially argued his "statements made after [the] illegal detention" should have been suppressed pursuant to application of the "exclusionary rule" for violations of the Fourth Amendment. But Yochheim abandoned that argument in his reply brief.

DMV agrees it had to show lawful detention and insists it met that burden with admissible evidence. We agree with the DMV.

A. *Legal Background*

Section 23136, subdivision (a) makes it "unlawful for a person under the age of 21 years who has a blood-alcohol concentration of 0.01 percent or greater, as measured by a preliminary alcohol screening test or other chemical test, to drive a vehicle." Subdivision (c) of the section provides, in relevant part: "(1) Any person under the age of 21 years who drives a motor vehicle is deemed to have given his or her consent to a preliminary alcohol screening test or other chemical test for the purpose of determining the presence of alcohol in the person, *if lawfully detained* for an alleged violation of subdivision (a). [¶] (2) The *testing shall be incidental to a lawful detention* and administered at the direction of a peace officer having reasonable cause to believe the person was driving a motor vehicle in violation of subdivision (a)." (Italics added.)

When someone petitions for a writ of mandate after the suspension of a driver's license, the trial court exercises its independent judgment to determine whether the weight of the evidence supports the administrative decision. (*Lake v. Reed* (1997) 16 Cal.4th 448, 456-457.) On appeal, we review the record to determine whether the trial court's findings are supported by substantial evidence, resolving all evidentiary conflicts and drawing all reasonable inferences in favor of the trial court's decision. (*Id.* at p. 457.)

B. *Reasonable Suspicion to Detain*

Yochheim provides no authority for the proposition that an officer's "reasonable suspicion" under Fourth Amendment principles controls whether there has been a "lawful detention" under section 23136. But the case of *Taylor v. Department of Motor Vehicles* (1995) 36 Cal.App.4th 812 so holds. (*Id.* at pp. 815-816.)

"A detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the

4

circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." (*People v. Souza* (1994) 9 Cal.4th 224, 231.)

In *People v. Brown* (2015) 61 Cal.4th 968, our Supreme Court explained the test and relevant factors for determining whether an officer had reasonable suspicion to detain someone. The court explained that detention is permitted when an officer has " 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.' " (*Id.* at p. 981.) Reasonable suspicion necessary to justify a detention depends on the content of information officers have and the degree of reliability of that information. (*Ibid.*) A sufficient basis to detain existed in *Brown*, where the "circumstances . . . include[d] a reliable citizen's report of a violent fight potentially involving a firearm, the [officer's] very quick response time, and [the defendant's] presence near the scene of the fight in the otherwise vacant alley," even though the officer *lacked* a "suspect description[]" when the suspect was detained. (*Id.* at pp. 980-981, 983-984.)

Here, around 2:00 a.m., a sheriff deputy in a sparsely populated county responded (in less than 20 minutes) to multiple reports of a possible traffic collision that may have involved alcohol, and spoke to people involved in the incident who gave him a description of the other car and driver. The sheriff deputy then saw Yochheim traveling in the passenger seat of the suspected vehicle close to the scene of the incident. Yochheim matched the description of the other driver and based on those facts, the sheriff deputy detained Yochheim and waited for CHP's arrival. These facts establish a particularized and objective basis for reasonable suspicion Yochheim drove under the influence of alcohol.

" ' "[T]he possibility of an innocent explanation does not deprive the officer of the capacity to entertain a reasonable suspicion of criminal conduct." ' [Citations.] 'What is required is not the *absence* of innocent explanation . . . .' The purpose of the detention is to resolve the ambiguity by allowing the officer to briefly investigate further." (*People v.*

*Brown, supra*, 61 Cal.4th at pp. 985-986.) "An officer 'who lacks the precise level of information necessary for probable cause to arrest' is not constitutionally required to 'simply shrug his shoulders and allow a crime to occur or a criminal to escape. . . . A brief stop of a suspicious individual, in order to . . . maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.' " (*Id*. at p. 986.) That is what happened here. The sheriff deputy detained Yochheim because he reasonably suspected that Yochheim had driven under the influence of alcohol and it is immaterial that the CHP officer ultimately concluded no traffic collision had occurred.

      C. *Propriety of Evidence Establishing Reasonable Suspicion*

Yochheim argues the DMV hearing officer and the trial court abused their discretion when they considered inadmissible hearsay statements in a police report. We disagree.

We review rulings regarding the admissibility of evidence for abuse of discretion, asking whether the " 'bounds of reason' " were exceeded. (*Molenda v. Department of Motor Vehicles* (2009) 172 Cal.App.4th 974, 986.) We review questions of law, including questions of statutory interpretation, de novo. (*Id.* at pp. 986-987.)

Citing *Hildebrand v. Department of Motor Vehicles* (2007) 152 Cal.App.4th 1562, the DMV argues the CHP officer's statement and investigation report were "admissible as records by public employees." In *Hildebrand*, the court held that, under Evidence Code section 1280, a peace officer's "[s]tatement and unsworn arrest report each qualif[y] as an admissible public employee record in [an] administrative [DMV] hearing, even to the extent that each reports [another's officer's] personal observations." (*Hildebrand,* at p. 1570.)[3]

---

[3] Appellant does not discuss *Hildebrand* in his reply brief.

The hearing officer and the trial court properly admitted and considered this hearsay evidence under *Hildebrand*. (See also *MacDonald v. Gutierrez* (2004) 32 Cal.4th 150, 159 ["so long as a sworn report is filed, it is consistent with the relaxed evidentiary standards" of a DMV administrative hearing that "an unsworn report filed by the arresting officer" can be considered]; *People v. Gomez* (2004) 117 Cal.App.4th 531, 540-541 [rejecting contention the trial court "erred in failing to strike the hearsay testimony of [d]etectives . . . because they merely repeated information relayed to them by other officers" in light of the "evidentiary rule drawn from *People v. Harvey* (1958) 156 Cal.App.2d 516 and *People v. Madden* (1970) 2 Cal.3d 1017," which "merely precludes the prosecution from relying on hearsay information communicated to the arresting officer that is not sufficiently specific and fact based to be considered reliable"].)

## DISPOSITION

The judgment is affirmed.

/s/

BOULWARE EURIE, J.

We concur:

/s/

MAURO, Acting P. J.

/s/

HOCH, J.